IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

| | |
|---|---|
| GARY HICKS | * |
| | * |
| Plaintiff, | * |
| | * |
| VS. | * CIVIL ACTION NO.: 2:06-CV-1017-WKW |
| | * |
| THE CITY OF MONTGOMERY | * PLAINTIFF DEMANDS TRIAL BY JURY |
| and | * |
| CHIEF ARTHUR BAYLOR | * |
| | * |
| Defendants. | * |

## COMPLAINT

Comes now the Plaintiff and submits his Complaint as follows:

### JURISDICTION

This Court has jurisdiction over this cause pursuant to 28 USC §1331 and §1343 pursuant to Title 42, Section 1983. Furthermore, jurisdiction over Plaintiff's claim for costs, expenses, and attorney's fees is additionally conferred by Title 42, Section 1988.

### VENUE

The Middle District of Alabama is the proper Venue for this action as the Plaintiff resides in the Middle District of Alabama, the Defendant The City of Montgomery employs the Plaintiff Gary Hicks within the Middle District of Alabama. The Middle District of Alabama is the judicial district where all actions giving rise to this claim occurred.
28 U.S.C. § 1391.

### THE PARTIES

1. The Plaintiff Gary Hicks is an individual over the age of 19 years and is a resident of Montgomery County, Alabama within the Middle District of Alabama.

2. The Defendant City of Montgomery is a Municipal Corporation within the Middle District of Alabama.

3. The Defendant Chief Arthur Baylor is an individual over the age of 19 years and is a resident of Montgomery County, Alabama within the Middle District of Alabama.

## **FACTS**

1. The Plaintiff Gary Hicks is a Captain with the City of Montgomery's Police Department and is supervised by Chief Arthur Baylor.

2. The Plaintiff was assigned to the Patrol Division and his Division Commander was Major Kevin Murphy.

3. Major Kevin Murphy treated those that were assigned to his Patrol Division in an unfair and abusive way. His actions in supervising his employees were contrary to the practices and/or policies of the Montgomery Police Department. There was mismanagement and corruption within the Division.

4. Major Kevin Murphy was confrontational and abusive to the Plaintiff and numerous others within the Division. The morale within the Division due to Major Kevin Murphy's management affected the efficiency of the Division and the safety of the public.

5. The Plaintiff sought redress for members of the Division and followed the policies and procedures of the Montgomery Police Department, complaining of the actions of Major Kevin Murphy to him and to others.

6. It was not a requirement of his employment nor a part of his job description to seek a grievance against Major Kevin Murphy. He was not compelled to do so as a part of his regular job duties as a Captain of the Montgomery Police Department.

7. Hicks's complaint that led to the investigation of Major Kevin Murphy was not done pursuant to his official duties.

8. In fact, it was a right available to him, but not a condition of his employment.

9. There was an investigation and over thirty officers and supervisors within the Montgomery Police Department gave statements complaining of improper actions by Major Kevin Murphy.

10. The investigation was conducted through the Montgomery Fire Department and those who gave statements were advised that Major Kevin Murphy would not be made aware of the substance of their statements. That was

not true.

11. When the Plaintiff filed his complaint, he was reassigned from the Patrol Division to the desk. Such assignment was commonly used to place officers who were under investigation. Major Kevin Murphy, who was under investigation, was allowed to remain as the Commander of the Patrol Division.

12. During the investigation and prior to its conclusion, Captain Gary Hicks received information that Major Kevin Murphy had put in his papers for retirement and that the results of the investigation would be released thirty days after the date of his retirement.

13. Major Kevin Murphy did not put in for retirement. The investigation was concluded and no action was taken against Major Kevin Murphy.

14. Major Kevin Murphy told people that, "Captain Hicks has been placed on the desk and there is a big investigation going on," not advising that the investigation was of Major Kevin Murphy and not Hicks. This caused officers of the Department to inquire of Hicks what he had done to be punished.

15. Captain Gary Hicks remained assigned to the desk, giving the appearance that he was guilty of misconduct. During the period of time that he was assigned to the desk, an officer of the Montgomery Police Department was arrested for child abuse and the department released to the media that pending the prosecution, that officer would be assigned to the desk.

16. There had been another Montgomery Police Officer who had been accused of rape and while that was being investigated, he was assigned to the desk.

17. After the conclusion of the investigation, the Defendant Chief Arthur Baylor, who is the final policy maker for the City of Montgomery as to matter concerning the Police Department, called a meeting of Major Kevin Murphy and Captain Gary Hicks, along with others. He advised Captain Gary Hicks that the investigation was concluded and no action was going to be taken.

18. During that meeting, he asked Major Kevin Murphy if he would care to see the file which he had on his desk of the investigation. Major Kevin Murphy advised that he did not care to see it, he knew that most of the things in there were

complaints based upon when he was a Lieutenant, giving every indication that he was throughly aware of what was contained in the file and that such had previously been provided to him.

19. Captain Gary Hicks advised that he did not feel that he could work in Major Kevin Murphy's division after the investigation and requested that he be transferred. At first Chief Baylor advised that he would not entertain a transfer and then after the meeting, asked Captain Hicks if he would consider being the Administrator of the Jail. Although that was not an assignment that Captain Gary Hicks wished to have, based on the instructions of Chief Arthur Baylor he made a request to be the Administrator of the Jail.

20. The Administrator of the Jail worked an 8:00 a.m. to 5:00 p.m. shift and supervised the jail. Captain Gary Hicks asked Chief Arthur Baylor how soon he needed the request and Chief Arthur Baylor advised him as soon as possible. Captain Gary Hicks prepared a request for transfer, seeking to be the Administrator of the Jail, which would be the highest ranking official within the jail. He presented that to his supervisor, Major Celia Dixon, who presented it to Chief Arthur Baylor. Upon receipt, Chief Arthur Baylor advised Major Celia Dixon that he did not know what this was about and that Captain Gary Hicks was not going to be transferred.

21. Captain Gary Hicks went through the proper channels and requested of the Chief to be allowed to speak with the Mayor of the City of Montgomery.

22. Captain Gary Hicks received permission to do so and met with the Mayor.

23. Captain Gary Hicks advised the Mayor of his assignment in the Jail and that the safety of the City, which is a matter of public concern, was compromised as there were few Captains now assigned to the Patrol Division and that the Division was mismanaged and corrupt.

24. The Mayor advised Captain Gary Hicks that he would be transferred and would not be required to work under the supervision of Major Kevin Murphy.

25. Chief Arthur Baylor again called Captain Gary Hicks to his office and was

visibly upset with him and advised that he would be assigned to the jail, that he would not be the Jail Administrator, and he would be supervised by a civilian employee, the Assistant Warden.

26. Chief Arthur Baylor complained that Captain Gary Hicks had gone "above my head."

27. Captain Gary Hicks was not given any job responsibility and was given little or nothing to do.

28. Captain Gary Hicks was assigned to the jail. He was put in a room to be treated as his office that had a sink, storage boxes, and stored furniture. There was no typewriter or computer. The desk had 2 broken drawers. The automobile that was assigned to him was taken from him and he has been the only Captain with the Montgomery Police Department that is not assigned a vehicle.

29. Captain Gary Hicks, after receiving this assignment, asked to be allowed to again go to the Mayor. Chief Arthur Baylor denied the request without giving him a reason other than that he would not allow him to go over his head again.

30. On one occasion, Captain Gary Hicks had to come downstairs from the jail in order to enter certain information upon the computer and Chief Arthur Baylor saw him at that time and advised Captain McCloud, the Assistant Division Commander of the Administrative Division, that Captain Gary Hicks was not to leave the jail and after that a memo was issued that Captain Gary Hicks was "confined" to the jail.

31. There are available Captain slots in a number of areas within the Montgomery Police Department that are not presently filled, but Captain Gary Hicks remained assigned to the jail, reporting to a civilian employee in a capacity, that as far as the chain of command, would be equal to a Corporal or Sergeant's position.

32. Retired Captain A. Hardy who had been out of service for over 10 years was allowed to come back to the employment and assigned as a Captain and Assistant Division Commander over detectives while Captain Gary Hicks remained assigned to the jail.

33. It is believed that Captain A. Hardy is no longer P.O.S.T. certified.

34. Captain A. Hardy had less time in grade as a Captain than Captain Gary Hicks.

35. Captain Gary Hicks's work duty assignment has been from 4:00 in the evening until 1:00 in the morning and there has been no designated shift for those times with the Montgomery Police Department. It is believed that Captain Gary Hicks has been the only employee of the Montgomery Police Department working those hours.

36. Being assigned during that time makes it impossible for Captain Gary Hicks to have time during the week with his children, as they are in school when he goes to work and asleep when he gets off. He must be asleep in the morning before they go to school.

37. When Captain Gary Hicks complained about his assignment, Chief Arthur Baylor advised this is what you asked for. Captain Gary Hicks responded that he did not ask to be assigned to the jail, reporting to a civilian, but rather to be the Administrator of the Jail as a Captain working a normal shift and only asked for that because it had been suggested by the Chief as the alternative to being assigned to work under Major Kevin Murphy.

38. The Mayor, Bobby Bright, by and through his Assistant, Michael Berdele, contacted the Plaintiff and had him report to him. In that meeting, the Mayor said he had heard through a confidential source that the Plaintiff was dissatisfied with his jail assignment.

39. The Plaintiff told the Mayor that he was dissatisfied and that he was being retaliated against. The Mayor told him he would talk to the Chief and call him back.

40. The Mayor did not call him back, but he received word that he was being assigned back to Major Kevin Murphy's division and would be required to report to another Captain who was Junior to him.

41. While the Plaintiff was "confined" to work in the jail, a number of Lieutenants were promoted to Captain and two newly appointed Captains, Junior

to the Plaintiff, were promoted to Assistant Division Commander positions. The Plaintiff being passed over for these assignments is retaliation.

42. The actions taken by Chief Arthur Baylor and by the City of Montgomery through its final policy maker are without justification and are retaliatory for Captain Gary Hicks's Complaint against Major Kevin Murphy for a matter of public concern, the improper operation of the Patrol Division, and for his seeking redress to the Mayor of the City of Montgomery for the way the Patrol Division was operated and for the lack of supervision in the Patrol Division.

43. The subject of the Plaintiff's speech was of a matter of public concern and was protected.

44. The Plaintiff's interest in speaking out was not outweighed by the City of Montgomery and Chief Arthur Baylor's interests in promoting the efficiency of the public service performed through their employees.

45. Throughout the time that Plaintiff Captain Gary Hicks was placed on the desk and the time that he has been assigned to the jail, he has experienced extreme stress and such has created adverse health conditions for which he has had to seek treatment.

## COUNT I

1. The Plaintiff hereby adopts and incorporates herein Paragraphs 1 - 45 as previously set forth.

2. Chief Arthur Baylor, acting under color of State Law and as the Chief Policy Maker for the City of Montgomery Police Department, retaliated against the Plaintiff for the Plaintiff's exercise of his First Amendment Rights in following policy and procedure, seeking redress for the improper supervision and operation of the Patrol Division by his Division Commander, Major Kevin Murphy, and for seeking redress of mistreatment and following the chain of command and speaking to the Mayor of the City of Montgomery concerning such mismanagement of the Patrol Division. His complaints were of a matter of public concern in that the mismanagement of the Patrol Division adversely affected the safety of the public within the City of Montgomery.

3. The retaliation against the Plaintiff was the result of a policy, practice, or custom of the City of Montgomery that was established by its Chief Policy Maker for the Police Department, Chief Arthur Baylor.

4. Chief Baylor, acting individually, retaliated against the Plaintiff for complaining and seeking a grievance against his Division Commander, Major Kevin Murphy, and then seeking redress from the Mayor of the City of Montgomery because of mismanagement of the Patrol Division. Chief Baylor retaliated against the Plaintiff while knowing that the law was clearly established that he should not retaliate against an employee for exercising his First Amendment Rights to report wrongdoing and mismanagement of a Division of the Police Department by a Supervisor.

5. The law was clearly established at the time the action Chief Baylor took that his treatment of the Plaintiff was in violation of the Plaintiff's Constitutional Rights.

6. The Plaintiff seeks compensatory damages from the City of Montgomery and compensatory impunitive damages from the Defendant, Chief Arthur Baylor, in an amount in excess of the jurisdictional limitation of this Court to be established by a duly impaneled jury.

7. The Plaintiff also seeks costs and attorney's fees pursuant to Title 42, Section 1988.

Respectfully submitted on this the 10th day of November, 2006.

_____
J. BERNARD BRANNAN, JR. (BRA022)
Attorney for the Plaintiff

OF COUNSEL:
THE BRANNAN LAW FIRM, P.C.
602 South Hull Street
Montgomery, Alabama 36104
(334) 264-8118

**PLAINTIFF DEMANDS TRIAL BY JURY**